Leland K. Faux, Esq.
Idaho Bar No. 10246
LELAND FAUX, ESQ. PLLC
490 Park Ave, Ste 10
Idaho Falls, Idaho 83402
T: (208) 497-2214
Leland@LelandFaux.com
*Attorney for Plaintiff Luis A. Sagastume*

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| LUIS A. SAGASTUME,<br><br>        Plaintiff,<br>vs.<br><br>RG TRANSPORTATION, INC, an Idaho corporation; DOES I-X, inclusive;<br><br>        Defendants. | Case No.:<br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Luis A. Sagastume, by and through counsel, alleges and complains as follows:

**PARTIES**

1. Plaintiff Luis A. Sagastume ("Mr. Sagastume") is an individual residing in Salt Lake County, Utah.

2. Defendant RG Transportation, Inc. ("RG Transportation") is an Idaho corporation doing business in Bonneville County, Idaho and is registered and authorized to operate as a common carrier of property (except household goods) with the Federal Motor Carrier Safety Administration ("FMCSA").

3. The true names and capacities of Doe Defendants I through X, inclusive, ("Doe Defendants") are unknown to Mr. Sagastume who therefore sues said Doe Defendants by such fictitious names. Mr. Sagastume is informed and believes and thereon alleges that each of the Doe

COMPLAINT - Page 1

Defendants may be legally responsible in some manner for the events and happenings described in this Complaint. Mr. Sagastume will seek leave of the Court to amend this Complaint to insert the true names and capacities of such Doe Defendants upon ascertaining the identity of such Doe Defendants.

## JURISDICTION AND VENUE

4. This case arises under 49 U.S.C. §§ 14102 and 14704 et seq., and 49 C.F.R. Part 376, et seq., governing the terms and conditions pursuant to which truck owner-operators lease equipment to motor carrier for the transport of property.

5. Jurisdiction of this matter is granted to this court by U.S.C. §§ 1331 (federal question jurisdiction) and 1337 (proceedings arising under an act of Congress regulating commerce). The causes of action alleged here arise under the laws of the United States regulating commerce and the activities of motor carriers engaged in the transportation of property in interstate commerce, including 49 U.S.C. §§ 13501, 14102, 1403 and 14704(a)(1) and (2), and 49 C.F.R. § 376, et seq.

6. Venue is proper under 28 U.S.C. § 1391(b) because the defendants are located in Bonneville County, Idaho, which is within the federal district.

7. The court has supplemental jurisdiction over the related Idaho state law matters under 28 U.S.C. § 1367.

## GENERAL ALLEGATIONS

8. On or around January 11, 2013, Mr. Sagastume entered into an Installment Sales Agreement with RG Transportation, LLC for the purchase of a 2013 Freightliner Cascadia, VIN 1FUJGLDR5DSBR0216 (the "Truck").

9. Among other things, the parties agreed in the Installment Sales Agreement that Mr. Sagastume would make 72 monthly payments in the amount of $2,315.73 towards the Truck.

10. On or around January 11, 2013, Mr. Sagastume also entered into an Independent Contactor Agreement with RG Transportation in which Mr. Sagastume agreed to haul loads on behalf of RG Transportation for compensation on a per-load basis.

11. The Installment Sales Agreement expressly incorporated the Independent Contactor Agreement. These agreements will be referred to collectively as the "2013 Agreements."

12. As part of the 2013 Agreements, the parties agreed that RG Transportation would give Mr. Sagastume a 30-day written notice and opportunity to cure any alleged default.

13. The 2013 Agreements also stated that Mr. Sagastume would not haul or transport loads for any other trucking company—that he would provide services exclusively to RG Transportation.

14. By and through the 2013 Agreements, RG Transportation was performing transportation in equipment it did not own, as the Truck was owned by Mr. Sagastume. See Idaho Code 28-2-401(1).

15. Under federal law, 49 C.F.R. Part 376.11, an authorized carrier may perform authorized transportation in equipment it does not own only if it has a written lease granting the use of the equipment and the lease meets the requirements contained in § 376.12.

16. Between January 11, 2013 and November 12, 2015, Mr. Sagastume hauled loads on behalf of RG Transportation on a full-time basis without a written lease that complied with the requirements contained in 49 C.F.R. Part § 376.12.

17. During this time, RG Transportation compensated Mr. Sagastume on a per-load basis at agreed upon rates.

18. However, RG Transportation applied unilateral deductions to these agreed upon rates that were not included in the 2013 Agreement or permitted in a written lease.

19. Therefore, these deductions were unlawfully charged against Mr. Sagastume's pay under the 2013 Agreements and federal law.

20. On November 13, 2015, Mr. Sagastume entered into a Lease Agreement with RG Transportation.

21. Between November 13, 2015 and the end of August 2016, Mr. Sagastume continued to provide hauling services for RG Transportation and RG Transportation continued to apply deductions.

22. Still, some of these deductions were applied although they were not specifically identified in the lease as required by the federal truth-in-leasing laws.

23. Towards the end of August 2016, RG Transportation suddenly terminated Mr. Sagastume's agreements (the 2013 Agreements and the Lease Agreement).

24. In doing so, RG Transportation did not provide the 30-day notice and opportunity to cure as required in the 2013 Agreements.

25. After this termination, RG Transportation took possession of Mr. Sagastume's truck.

26. At the time of his termination, Mr. Sagastume was not in default on his payment obligations under the Installment Sales Agreement.

27. Thereafter, RG Transportation began demanding payments from Mr. Sagastume for certain charges.

///

///

COMPLAINT - Page 4

**FIRST CAUSE OF ACTION**
**Injunctive Relief – 49 U.S.C. § 14704(a)(1)**

28. Mr. Sagastume repeats and realleges the foregoing paragraphs as though set forth fully herein.

29. Under federal law, an "authorized carrier may perform authorized transportation in equipment it does not own only under the following conditions: . . . [t]here shall be a written lease granting the use of the equipment and meeting the requirements contained in § 376.12." 49 C.F.R. Part 376.11.

30. Defendant RG Transportation is engaged in the unlawful provision of transportation services in equipment it does not own because the leases governing its use of such equipment fail to conform to 49 C.F.R. Part 376.

31. RG Transportation's Lease Agreement with Mr. Sagastume fails to contain certain provisions required by 49 C.F.R. § 376.12; including, by way of illustration and not limitation:

   a. Failing to identify to method of determining the amount of compensation. 49 C.F.R. § 376.12(d).

   b. Failing to identify how the revenue is determined and failing to state that the driver will be given a copy of the rated freight bill before or at the time of settlement or other supporting documentation. 49 C.F.R. § 376.12(g).

   c. Failing to recite an unqualified obligation to provide documentation to substantiate chargebacks or deductions. 49 C.F.R. § 376.12(h).

   d. Failing to specify that it will provide the driver with certificates of insurance for each policy the driver purchases through it. 49 C.F.R. § 376.12(j)(2).

   e. Failing to specify that, upon request, it will provide a copy of each insurance policy. 49 C.F.R. § 376.12(j)(2).

  f. Failing to clearly specify the conditions under which deductions for cargo or property damage may be made and the driver's right to receive a written explanation and itemization of any such deductions before deductions are made. 49 C.F.R. § 376.12(j)(3).

32. RG Transportation's Lease Agreement also contains provisions and practices that conflict with 49 C.F.R. § 376.12; including, by way of illustration and not limitation:

  a. Stating that it can deduct from the driver "any other amounts … for any reason" notwithstanding its obligation to specifically identify all chargebacks in advance. 49 C.F.R. § 376.12(h).

  b. Requiring forced purchases, such as the purchase of the company logo, drug testing fees, a fuel card as a "benefit" in which the driver is charges transaction fees per use in excess of the actual fees incurred by the carrier, advanced repair fees, etc. 49 C.F.R. § 376.12(i).

  c. Charging for insurance without specifying the amount of the deduction in advance. 49 C.F.R. § 376.12(j)(1).

  d. Stating that RG Transportation will make payments within 30 days although payments must be made within 15 days. 49 C.F.R. § 376.12(f).

33. Mr. Sagastume has been damaged as a result of the failures and practices identified above and RG Transportation is continuing to pursue items in violation of the truth-in-leasing law.

34. 49 U.S.C. § 14704(a)(1) permits a person to "bring a civil action for injunctive relief for violations of sections 14102, 14103, and 14915(c)" which includes the provisions of 49 C.F.R. § 376.12.

35. Mr. Sagastume therefore requests an order enjoining RG Transportation from continuing any attempt to enforce any amounts claimed through the unlawful Lease Agreement.

36. Mr. Sagastume is entitled to his reasonable attorney's fees and costs in pursuing this relief.

## SECOND CAUSE OF ACTION
### Violations of Truth-in-Leasing – 49 U.S.C. § 14704(a)(2)

37. Mr. Sagastume repeats and realleges the foregoing paragraphs as though set forth fully herein.

38. 49 U.S.C. 14704(a)(2) permits a person to bring an action for damages against a carrier, such as RG Transportation.

39. Between January 11, 2013 and November 12, 2015, RG Transportation unlawfully made deductions from Mr. Sagastume's pay because these deductions were made without a written lease agreement that specifically permitted them as required by 49 C.F.R. § 376.12.

40. RG Transportation further violated the Truth-in-Leasing laws by continuing to make unlawful deductions after the parties entered into the Lease Agreement, including, by way of illustration and not limitation:

   a. Providing Mr. Sagastume with a fuel card as a "benefit" and tacking on forced charges in excess of the actual transaction charges for use of the card;

   b. Deducting "advance fees" that are not listed in the Lease Agreement;

   c. Failing to provide backup documentation for deductions;

   d. Deducting fuel when fuel is not identified as an item that will be deducted;

   e. Deducting insurance without identifying the amount or disclosing the actual coverage.

41.     RG Transportation's violations of 49 C.F.R. § 376.12 have damaged Mr. Sagastume.

42.     Mr. Sagastume has standing to collect on the actual damages incurred within four-years of the filing of this Complaint, in an amount to be proven at trial.

43.     Mr. Sagastume is entitled to his reasonable attorney's fees and costs in pursuing this relief.

## THIRD CAUSE OF ACTION
### Breach of Contract

44.     Mr. Sagastume repeats and realleges the foregoing paragraphs as though set forth fully herein.

45.     In the Independent Contractor Agreement, the parties agreed that "RG Transportation shall compensate [Mr. Sagastume] for loads hauled or transported under this agreement on a per-load basis or as otherwise agreed to by the parties."

46.     RG Transportation and Mr. Sagastume reached an agreement on the per-load rates and these rates are set forth in spreadsheets called "Settlement Worksheets" in a column labeled "Agreed Rate."

47.     Instead of paying Mr. Sagastume the Agreed Rate, RG Transportation unilaterally applied substantial deductions to the rates prior to issuing the payment in violation of the agreement.

48.     RG Transportation's breaches caused substantial damages to Mr. Sagastume.

49.     RG Transportation also breached the 2013 Agreements when it terminated Mr. Sagastume without providing him a 30-day notice and opportunity to cure.

50.     RG Transportation further violated Mr. Sagastume's contractual rights when it took possession of the Truck although Mr. Sagastume was not in default on the payment terms.

51.     RG Transportation breached the Lease Agreement when it applied deductions that were not authorized in the agreement.

52.     As a result of RG Transportation's multiple breaches, Mr. Sagastume has incurred damages; without limitation, these damages include lost income, lost equity in the Truck, and the costs of purchasing a replacement truck.

53.     Mr. Sagastume is entitled to reasonable attorney's fees and costs under the terms of the contracts referenced above.

## FOURTH CAUSE OF ACTION
## Breach of Covenant of Good Faith and Fair Dealing

54.     Mr. Sagastume repeats and realleges the foregoing paragraphs as though set forth fully herein.

55.     Each of the contracts included the implied covenant of good faith and fair dealing under Idaho law.

56.     RG Transportation breached the covenant of good faith and fair dealing when it made deductions to Mr. Sagastume's pay without authorization in the 2013 Agreements and/or the Lease.

57.     At the time RG Transportation began making these unauthorized deductions, Mr. Sagastume questioned the deductions but felt pressured not to pursue the breaches because he already owed RG Transportation a substantial amount under the Installment Sales Agreement and he feared that fighting for his contractual rights would result in retaliation.

58.     Therefore, Mr. Sagastume continued to perform services for RG Transportation although he disagreed with the substantial deductions so that he could keep working in order to fulfill his debt obligations to RG Transportation.

59. The unlawful deductions became even more substantial after Mr. Sagastume entered into the Lease.

60. RG Transportation's conduct in this regard was not merely a breach of the covenant of good faith and fair dealing (and the contracts and federal law) but rose to the level of being abusive.

61. Based on information and belief, the contracts referenced in this complaint were created and designed for the purpose of giving RG Transportation a windfall.

62. When Mr. Sagastume confronted RG Transportation about the unlawful deductions, Mr. Sagastume was terminated.

63. As such, Mr. Sagastume's fear of retaliation was realized.

64. RG Transportation's unfair and abusive conduct continued when RG Transportation took possession of the Truck.

65. At the outset, the 2013 Agreements were designed to give RG Transportation the type of leverage and control over drivers that Mr. Sagastume experienced in this case.

66. Although the 2013 Agreements represent that Mr. Sagastume is an independent contractor, the reality is that RG Transportation knew and intended that Mr. Sagastume would be performing services exclusively for RG Transportation—that he had no independence to provide services to other carriers in the Truck he owned.

67. These contracts were designed to allow RG Transportation the ability to exercise unfair control over the driver, avoid legal obligations that would be associated with employment, and capture financial windfalls.

68. In this case, RG Transportation actually used the contracts to exercise unfair control over Mr. Sagastume, to avoid legal obligations (such as paying employment taxes, wages,

overtime, benefits, etc.), and capture financial windfalls by, among other things, refusing to actually compensate Mr. Sagastume for the services rendered through the application of unlawful deductions.

69. Mr. Sagastume has been damaged as a result of RG Transportation's breach of the covenant of good faith and fair dealing.

## FIFTH CAUSE OF ACTION
### Conversion/Wrongful Repossession

70. Mr. Sagastume repeats and realleges the foregoing paragraphs as though set forth fully herein.

71. RG Transportation wrongfully repossessed the Truck when it took possession of it although Mr. Sagastume was not in default under the Installment Sales Agreement.

72. RG Transportation's conduct caused damage to Mr. Sagastume in an amount to be determined at trial.

73. Based on information and belief, RG Transportation has engaged in a pattern and practice of wrongful repossessing trucks from owner-operators and this conduct is oppressive, malicious, or outrageous and punitive damages should be awarded to deter RG Transportation from this conduct.

## SIXTH CAUSE OF ACTION
### Unjust Enrichment

74. Mr. Sagastume repeats and realleges the foregoing paragraphs as though set forth fully herein.

75. Mr. Sagastume provided a benefit to RG Transportation by hauling loads on its behalf.

76. RG Transportation appreciated the benefits provided by Mr. Sagastume.

COMPLAINT - Page 11

77. However, RG Transportation failed to reasonable and lawfully compensate Mr. Sagastume for the services provided.

78. It would be inequitable for RG Transportation to accept the benefits without paying of the reasonable value of such benefit.

## PRAYER FOR RELIEF

WHEREFORE, Mr. Sagastume prays for the following relief:

1. For judgment against the Defendant RG Transportation for the actual damages (special and general) suffered by Mr. Sagastume as a result of the actions and conduct of RG Transportation as described above, in an amount to be determined at trial;

2. For a judgment and order enjoining RG Transportation from engaging in conduct in violation of federal and state law;

3. For punitive damages;

4. For an order directing that Mr. Sagastume is not liable to pay for charges demanded by RG Transportation in violation of the truth-in-leasing act or the relevant contracts;

5. For a judgment against RG Transportation for Mr. Sagastume's costs and reasonable attorneys' fees; and

6. For such other and further relief as the Court deems just and equitable.

DATED this 17th day of August, 2018.

/s/ Leland K. Faux
Leland K. Faux, Esq.
Idaho Bar No. 10246
LELAND FAUX, ESQ. PLLC
*Attorney for Plaintiff*