UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| LUIS A. SAGASTUME,<br><br>     Plaintiff,<br><br>RG TRANSPORTATION, INC., an Idaho corporation; UNITED STATES FIRE INSURANCE CO.; DOES I-X, inclusive,<br><br>     Defendants. | Case No. 4:18-cv-00361-DCN<br><br>**MEMORANDUM DECISION AND ORDER** |

## I. INTRODUCTION

Pending before the Court is Defendants' Motion to Dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Dkt. 14. On February 28, 2019, the Court held oral argument and took the motion under advisement. Upon review, and for the reasons set forth below, the Court GRANTS in PART and DENIES in PART the Motion.

## II. BACKGROUND

Plaintiff Luis A. Sagastume formerly worked for Defendant RG Transportation, Inc. ("RGT"). RGT is registered and authorized to operate as a common carrier of property—in layman's terms, RGT is a trucking company.

On or around January 11, 2013, Sagastume entered into an Installment Sales Agreement with RGT for the purchase of a 2013 Freightliner Cascadia truck. As part of the agreement, the parties agreed that Sagastume would make 72 monthly payments in the amount of $2,315.73 towards the Truck. The parties also agreed, as part of the

Agreement, that RGT would give Sagastume 30-days written notice and an opportunity to cure any alleged default that arose.

On or around January 11, 2013, Sagastume also entered into an Independent Contactor Agreement with RGT in which Sagastume agreed to haul loads on behalf of RGT for compensation on a per-load basis. These agreements stated that Sagastume would not haul or transport loads for any other trucking company, but that he would provide services exclusively to RGT. On November 13, 2015, Sagastume entered into another lease agreement with RGT under the same general provisions.

Sagastume alleges that between January 11, 2013, and the end of August 2016, he hauled loads exclusively for RGT but that the lease agreements—mentioned above— failed to comply with applicable law. Furthermore, Sagastume alleges that RGT unilaterally applied deductions to his pay—i.e. "skimmed" his profits—and ultimately terminated him without cause. In terminating him, Sagastume alleges that RGT failed to give him 30-days' notice as required.

Sagastume filed suit on August 17, 2018, alleging seven (7) different state and federal causes of action.

On November 16, 2018, RGT filed the instant motion to dismiss asserting that Sagastume has failed to allege sufficient factual details in his Complaint to support each of his claims, and furthermore, that certain claims are statutorily barred.

### III. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) permits a court to dismiss a claim if the plaintiff has "fail[ed] to state a claim upon which relief can be granted." "A Rule 12(b)(6)

dismissal may be based on either a 'lack of a cognizable legal theory' or 'the absence of sufficient facts alleged under a cognizable legal theory.'" *Johnson v. Riverside Healthcare Sys., LP*, 534 F.3d 1116, 1121 (9th Cir. 2008) (citation omitted). Federal Rule of Civil Procedure 8(a)(2) requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554 (2007). "This is not an onerous burden." *Johnson*, 534 F.3d at 1121.

A complaint "does not need detailed factual allegations," but it must set forth "more than labels and conclusions, and a formulaic recitation of the elements." *Twombly*, 550 U.S. at 555. The complaint must also contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Id.* at 570.

In deciding whether to grant a motion to dismiss, the court must accept as true all well-pleaded factual allegations made in the pleading under attack. *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). A court is not, however, "required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

In cases decided after *Iqbal* and *Twombly*, the Ninth Circuit has continued to adhere to the rule that a dismissal of a complaint without leave to amend is inappropriate unless it is beyond doubt that the complaint could not be saved by an amendment. *See Harris v. Amgen, Inc.*, 573 F.3d 728, 737 (9th Cir. 2009).

## IV. DISCUSSION

RGT alleges that Sagastume's first two causes of action (the "Truth in Leasing" Claims) are statutorily barred. RGT also alleges that each claim—including the Truth in Leasing claims—fails to allege sufficient facts to state a plausible claim for relief and further fails to provide it (RGT) with sufficient notice to adequately defend itself.

The Court will address each claim in turn, but must first provide some general background on the trucking industry and federal Truth in Leasing law to aid the reader in understanding the Court's decision today.

A.  Trucking

In the trucking industry, there are—generally speaking[1]—three main players: (1) shippers, who typically are manufacturers sending goods to retailers or others, (2) truckers, who transport the goods, and (3) motor carriers who arrange the transportation between the shippers and truckers. *See*, *e.g.*, *RLI Insurance Co. v. All-Star Transportation, Inc*., 608 F.3d 848, 848 (D.C. Cir. 2010). In addition to the three players listed above, sometimes other individuals may be involved in the process. For example, a transportation "broker" arranges the transportation of a shipper's goods with an authorized motor carrier for a fee. *See* 49 C.F.R. § 371.2. There are also "intermediary agents" who, like brokers, are individuals who fall somewhere between the other

_____

[1] There are presumably numerous ways a business of this nature could be structured, and the terms used herein could overlap or mean different things to different people. The Court's brief description here is meant only to aid the reader. It is not meant to be an authoritative source on the infrastructure of the trucking industry.

parties—between a carrier and an owner/operator for example—and arrange fees, leases, etc., with other third parties.

In this case, RGT is a motor carrier. It coordinates the shipment of goods between manufactures, or front-end business, and retailers, or back-end businesses. Sagastume is an owner/operator. He owns his truck (via an installment sales contract with RGT) and also acts as an operator hauling loads on behalf of RGT.

B.  Truth in Leasing

Federal Truth in Leasing regulations, 49 C.F.R. Part 376, are part of the "Federal Motor Carrier Safety Regulations" which apply to interstate transportation under the authority of 49 U.S.C. §§ 13301 and 14102. These regulations were initially promulgated by the Interstate Commerce Commission and are currently overseen by the Federal Motor Carrier Safety Administration. *See Owner-Operator Independent Drivers Ass'n, Inc. v. Bulkmatic Transport Co*., 503 F.Supp.2d 961, 963 (N.D. Ill. 2007) (summarizing regulatory oversight). Under the Truth in Leasing regulations, when a motor carrier arranges transportation in equipment owned by others, it must have a written lease with the owner or owner-operator of that equipment that meets certain requirements. 49 C.F.R. § 376.11 – 376.12. The purpose of these regulations is to "promote full disclosure between the carrier and owner-operator in the leasing contract, promote the stability and economic welfare of the independent trucker segment of the motor carrier industry, and eliminate or reduce the opportunity for skimming and other illegal practices." Part 1057—Lease and Interchange of Vehicles, 44 Fed. Reg. 4681 (January 23, 1979).

Both sides agree that owner-operators "are precisely the intended beneficiaries of the protection in the Truth in Leasing regulations." *See* Dkt. 14-1, at 7; *Citing Yata v. BDJ Trucking Co.*, 2018 WL 3303290, *3 (N.D. Ill. July 5, 2018).

   C.  Claims at issue

      1.  Truth in Leasing Claims (Claim 1 and Claim 2 in Amended Complaint)

Sagastume's first cause of action seeks an injunction against RGT on the basis of certain alleged violations of 49 C.F.R. § 376.12, while his second cause of action asserts claims for damages based on these alleged violations. RGT contends that it is statutorily exempt from the provisions at issue and that these claims must be dismissed.

Under 49 C.F.R. § 376.26, "the leasing regulations set forth in § 312.12(e) through (l) do not apply to leases between authorized carries and their agents." RGT argues that Sagastume was its agent and therefore he cannot sue under these provisions. This assertion is not clearly supported by the record.

As a threshold matter, Section 10 of the 2015 lease agreement between Sagastume and RGT states that "Owner/Operator is an independent contractor and *is not to be considered an agent* or employee of RG Transportation for any purpose." Dkt. 14-2, at 11 (emphasis added). RGT asserts that contractual language is not dispositive, and this particular language notwithstanding, the court "still has to make a legal determination whether Sagastume functioned in fact as an agent of RGT." Dkt. 14, at 4.

RGT notes that "agent" is not defined anywhere in 49 C.F.R. § 376 and undertakes a "plain meaning" analysis, concluding that because Sagastume acted on behalf of RGT,

got his "marching orders" from RGT, and was subjected to a host of other lease provisions limiting—or otherwise directing—his work, he was in fact, an agent.

After reviewing Sagastume's allegations in his complaint, RGT simply takes the position that "taking the allegations contained in the Amended Complaint as true, Sagastume functioned as RGT's agent." Dkt. 14, at 4. In its reply brief, RGT softens its position somewhat and states that "the Court *should assume* that there was an agency relationship." Dkt. 17, at 3. Ultimately, RGT argues that the exemption in 49 C.F.R. § 376.26 applies and that Sagastume's Truth in Leasing claims are statutorily barred.

In response, Sagastume contends that the exemption does not apply. Sagastume does not argue that the term "agent" is necessarily ambiguous, but rather that it must be read in its full context, and interpreting it as RGT suggests would result in "an absurd or impracticable consequence." Dkt. 15, at 6 (citing *United States v. Vargel*, 780 F.2d 758, 761 (9th Cir. 1986).

First, Sagastume openly admits that he was required to follow certain rules and procedures of RGT's, but alleges that there is no indication of which requirements, obligations, or instructions, if any, qualified him as an "agent." Furthermore, he contends that if agency if simply a matter of authority, any or all owner/operators could be considered "agents" of multiple carriers (i.e. anyone they haul loads for). Sagastume reasons that this result would be absurd and violate the general purpose of the statute. If owner/operators were always considered agents, carriers would not need to follow the leasing provisions of 49 C.F.R. § 376. Furthermore, if the leasing requirements of 49 C.F.R. § 376 are not for owners/operators, who else would they be for?

Second, Sagastume reviews the relevant legislative history and notes that the Interstate Commerce Commission's discussions regarding this exemption makes clear that it intended for this exemption to help owner/operators by not allowing carriers to contract around the leasing requirements via an intermediary agent, rather than negotiating with an owner/operator directly.[2] Upon review, the Court must agree with Sagastume.

The fact that this term is not defined lends credence to the argument that it is ambiguous. Without a definition of who qualifies as an "agent", it would be difficult for a party to know whether he or she falls under its provisions. Furthermore, as the regulation's history seems to make clear, this exemption *was not* intended to encompass owner/operators. And most importantly, the contract between these two parties specifically states that Sagastume is not RGT's agent.

To be sure, RGT is not taking the position that all owners/operators are agents,[3] but only that Sagastume is in this case. This *fact specific* position, however, cannot be determined at this stage of the case.[4] Because the Court cannot find as a matter of law

---

[2] The Commission never intended for authorized carriers to be able to escape any of their obligations to owner-operators under the new leasing rules merely by contracting directly with an agent rather than with individual owner-operators. 45 Fed. Reg. 13160.

[3] After all, it seems logical that for numerous reasons—including for liability purposes—carriers would actually *prefer* that their owner/operators were independent contractors rather than agents.

[4] Although this case is not yet at the summary judgment stage, the Court notes that whether Sagastume was factually an agent is normally a question that can only be determined by a trier of fact. A jury must weigh the evidence and determine if any particular fact aligns with the characteristics of an agent, an independent contractor, or an employee. *See In re McRoyal*, 869 F.2d 1497 (9th Cir. 1989) (noting that

that Sagastume was an agent, the exemption provision in 49 C.F.R. § 376.26 does not apply and his Truth in Leasing claims are not statutorily barred. Claims 1 and 2 cannot, therefore, be dismissed on this (agent exception) basis.

Beyond its statutory exemption argument, RGT alleges that Sagastume's Truth in Leasing claims fail to state claims for relief under Rule 12(b)(6). As noted in the introduction, the Court will address each claim in turn.

2. Injunctive relief (Claim 1)

In this claim, Sagastume alleges that RGT's lease agreement failed to comply with certain provisions as outlined in 49 C.F.R. § 376.12 and/or contained provisions directly in conflict with 49 C.F.R. § 376.12.

Under 49 U.S.C. § 14704(a)(1)—titled "Enforcement of Order"—"A person injured because a carrier or broker providing transportation or service subject to jurisdiction under chapter 135 does not obey an order of the Secretary or the Board . . . may bring a civil action to enforce that order under this subsection." This section goes on to specify that "[a] person may bring a civil action for *injunctive relief* for violations of sections 14102, 14103, and 14915(c)." *Id.*

In this case, it appears that Sagastume reads these provisions in the disjunctive. That is to say, Sagastume claims that RGT violated Federal Truth in Leasing provisions and therefore, in order to "enforce" those provisions, he has to sue under 49 U.S.C. §

_____

unless there is evidence susceptible to only one inference "the existence or absence of agency is [] a question of fact, triable by a jury").

14704(a)(1). This is not appropriate, however, as the only available relief under section (a)(1) is "injunctive relief."

Because Sagastume no longer works for RGT, there is nothing to enjoin.[5] The Ninth Circuit has made clear that section (a)(1) does not provide other equitable relief. *Owner-Operator Indep. Drivers Ass'n, Inc. v. Swift Transp. Co. (AZ)*, 612 F. App'x 409, 411 (9th Cir. 2015) (citing *Owner-Operator Indep. Drivers Ass'n, Inc. v. Swift Transp. Co. (AZ)*, 632 F.3d 1111, 1121 (9th Cir. 2011) (the statute "list[s] only injunctive relief to the exclusion of other equitable remedies")).

Furthermore, Sagastume has not alleged any violations of the specific sections listed in section (a)(1) that qualify for such relief.

To some degree, it appears that Sagastume plead an (a)(1) violation thinking that doing so was necessary to recover damages under section (a)(2). This is not the case. These subsections serve separate and distinct purposes and one is not a pre-requisite to the other. *See Fulfillment Servs. Inc. v. United Parcel Serv., Inc.*, 528 F.3d 614, 620 (9th Cir. 2008) ("We have previously held that § 14704(a)(2) creates a private cause of action for violations of the MCA (Motor Carrier Act) and its attendant regulations . . . .").

In this case, because there is nothing to enjoin, Sagastume lacks standing to sue under 49 U.S.C. § 14704(a)(1). Accordingly, Sagastume's first cause of action is DISMISSED.

---

[5] Granted, if Sagastume represented a class that included individuals who still worked for RGT this analysis would be different. However, as it stands, Sagastume does not have standing to sue under section (a)(1) as the relief of that subsection would not affect him.

3.  Damages for Truth in Leasing violations (Claim 2)

As just noted, while Sagastume may not have standing to sue under 49 U.S.C. §

14704(a)(1), he does have standing to sue under 49 U.S.C. § 14704(a)(2) as he believes

he has suffered damages as a result of RGT's actions. Broadly speaking, in Claim 2,

Sagastume asserts that RGT violated specific Truth in Leasing provisions and unlawfully

deducted—or "skimmed"—fees and other expenses from his earnings. In support,

Sagastume provides some examples of these failures "by way of illustration and not

limitation."

RGT takes issue with certain examples given—but not with others—and states

that Sagastume has wholly failed to put it on notice of what is being alleged. RGT argues

that Sagastume's Complaint contains conclusory allegations (classic "unadorned, the-

defendant-unlawfully-harmed-me accusations") specifically forbidden by *Iqbal* and

*Twombly*. *See Iqbal*, 556 U.S. at 678. This argument presents the age-old question of how

much information is enough. It is well settled that a complaint need only contain a "short

and plain statement" and "does not need detailed factual allegations" to survive a motion

to dismiss. Fed. R. Civ. P. 8(a); *Twombly*, 550 U.S. at 555. This plainness, however, must

be tempered with considerations that the claims be "more than labels and conclusions,

and a formulaic recitation of the elements" and must "give the defendant fair notice of

what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 554-55.

And while the parties argue at length concerning the factual allegations in support

of the claim, the Court need not—in truth it cannot—address these competing factual

positions at this point in the litigation. The Court must only determine if Sagastume has plead enough to put RGT on notice.

To be sure, some factually allegations must be plead, but these are only examples and are specifically *not* all-inclusive. There is no reason for the Court to weigh in on any specific example now when more may arise, or disappear, during discovery—and frankly, the Court cannot reach such a conclusion at this point without discovery.[6]

More importantly, the examples in Sagastume's Complaint are provided as the basis for the ultimate contention that RGT fraudulently "skimmed" money from Sagastume under vague—or allegedly non-existent—lease provisions in the contracts, but the examples are not claims themselves. Said differently, one of RGT's arguments is that these examples lack sufficient basis, however, these examples are not claims themselves but rather facts supporting the true claim of lease violations under federal Truth in Leasing regulations.

While the Court will not delve into all of Sagastume's examples listed in his Complaint, by way of illustration, the Court will briefly discuss the fuel card dispute as it illustrates that Sagastume has in fact recited facts sufficient to support his "skimming"

---

[6] RGT continually takes the position that under its interpretation of the facts, there is no claim for relief. This, however, applies an inappropriate standard. There must be no set of facts that, when viewed in Plaintiff's favor, support a legal cause of action in order for the Court to grant a motion to dismiss. *See Conley v. Gibson,* 355 U.S. 41, 45–46 (1957) (A complaint may not be dismissed pursuant to Rule 12(b)(6) unless it appears beyond doubt, even when the complaint is liberally construed, that "the plaintiff can prove no set of facts in support of his claim which would entitle him to relief"). Here, Sagastume's position regarding certain specific facts may turn out to be incorrect, but only discovery will flesh that out. As it stands, Sagastume's interpretation must be taken as true and when the Court does this, it finds that Sagastume has alleged plausible claims for relief.

claim and that RGT is sufficiently on notice as it was able to argue specifics in opposition to this factual example.

In reviewing the lease provisions, it is not entirely clear—as RGT asserts—that fuel costs were an expense borne by the owner/operators. First, fuel itself is not listed as an offset cost that will be deducted from owner/operators. *See* Dkt. 14-2 at 7. Second, RGT's argument that the phrase "Issue and use of fuel card at Owner/Operator's expense" *Id*. at 10, as an employee benefit inherently included the fuel itself—and not just the card transactions fees—is not air-tight. RGT could have simply listed fuel as something owners/operators had to cover, and/or "use of a fuel card at owner/operator's expense" could be interpreted to mean the card itself, and not whatever charges were actually placed on the card. It seems highly improbable that an agreement between sophisticated parties—and surrounding a key expense such as fuel—would not be clear, but based on the materials currently before the Court, the Court cannot say that Sagastume's claim on this point is without basis.

The Court has reviewed the Amended Complaint in this matter and while more details are always better, Sagastume has met the necessary pleading requirements. This is evidenced by the fact that RGT responded to specific examples in Sagastume's Complaint. While there are other examples that RGT does not specifically address—or alleges it cannot address without more facts—this can be worked out in discovery through initial disclosures, interrogatories, requests for productions, and the like. The Court is not absolving Sagastume of its pleading duty, but finds that the claimed omissions are minor in nature, can be clarified during the course of litigation, and

ultimately do not prejudice RGT. RGT has a firm grasp on Sagastume's allegations and can respond accordingly—as it specifically did to the fuel card allegations.

While some specific examples of RGT's so-called "skimming" practices may be in dispute, there is really no question as to what is at issue. RGT disagrees with Sagastume's interpretation of the facts of this case to be sure—and presents evidence in support of its position—but at this point the Court is not to weigh the evidence,[7] but simply determine whether a plausible claim for relief has been stated. The Court finds that such is the case here. RGT's Motion to Dismiss Claim 2 is DENIED.

4.  Breach of Contract (Claim 3)

In Claim 3, Sagastume alleges that RGT breached its contracts with him. RGT argues that Sagastume has again fallen short of the pleading mark and provided only "generalized, conclusory statements" and that it cannot know how to respond. The Court does not agree. In his Amended Complaint, Sagastume gives specific examples—such as RGT adjusting the agreed upon per load rate, not giving him 30-days' notice to cure the alleged default, and repossessing his truck—of the breaches that occurred.

Now, to be fair, Sagastume does use more generalized statements about the inappropriate "deductions," as another example of RGT's breach, but even these

_____

[7] *Jones v. Johnson,* 781 F.2d 769, 772, n. 1 (9th Cir.1986) ("[A]ny weighing of the evidence is inappropriate on a 12(b)(6) motion."); *Glen Holly Entertainment, Inc. v. Tektronix, Inc.,* 100 F.Supp.2d 1086, 1089 (C. D. Cal. 1999) ("On a motion to dismiss, the Court evaluates only the legal sufficiency of a complaint and not the weight of the evidence supporting it."). *See also* Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure, § 1356 (2d ed.1990) (explaining that "[t]he purpose of a motion under Rule 12(b)(6) is to test the formal sufficiency of the statement of the claim for relief; it is not a procedure for resolving a contest about the facts or the merits of the case").

allegations are not wholly unknown to RGT. It admits that these deductions are most likely the ones referenced in Claims 1 and 2, but asserts that it does not know that for sure. Sagastume, in his response, affirms this assumption, noting the concept of incorporation in a Complaint and that these deductions are clearly the same ones referenced previously.

Here, even discounting the concern about the deductions, Sagastume has given other very specific examples of the ways in which he believes RGT breached the contracts. RGT is on notice of the substance of this claim; therefore, the Court will DENY RGT's motion as to Claim 3.

5. Covenant of Good Faith and Fair Dealing (Claim 4)

In Claim 4, Sagastume alleges that RGT's actions against him breached the covenant of good faith and fair dealing.

RGT asserts that this claim is duplicative of the claim for breach of contract and must be dismissed. At the same time, RGT acknowledges that there are circumstances when these claims can co-exist—specifically if the alleged damages relate to the breach of the covenant itself and not just the contract. Finally, RGT alleges that Sagastume has improperly included emotional distress in this claim.

First, Idaho does recognize a separate cause of action for the violation of the implied covenant of good faith and fair dealing where "the damages relate specifically to the breach of the good faith covenant." *Smith v. Meridian Joint Sch. Dist. No. 2*, 128 Idaho 714, 721, 918 P.2d 583, 590 (1996). Here, Sagastume alleges that while there is no provision in the contract between him and RGT that prohibits retaliatory, abusive, or

unfair conduct, the conduct it engaged in is prohibited by the implied covenant. The Court takes no position on the merits of this claim at this time, but finds that the allegations are different in substance from the main breach of contract claim and can stand on their own. Said differently, this claim does not relate to RGT's failure to comply with Truth in Leasing regulations, the deductions, or any other specific provision of the contracts themselves, but rather RGT's purported retaliatory conduct when Sagastume brought up his concerns.

Second—regarding RGT's emotional distress concerns—the Idaho Supreme Court has held that "a claim for infliction of emotional distress is not prohibited any time a breach of contract claim is involved," but simply that it "must arise independently of the breach of contract claim." *Thomas v. Med. Ctr. Physicians, P.A.*, 138 Idaho 200, 211 (2002). Again, according to Sagastume, this emotional distress (if any) did not come from the contract breaches themselves, but from the retaliation he suffered at the hands of RGT when he raised concerns about the contracts, deductions, and fees. Although slightly nuanced, there is a difference between RGT's alleged breach and its behavior towards Sagastume.

Again, the Court takes no position on the possible success of any allegation of emotional damages, as emotional distress damages may only be awarded "if the facts of the case support such a claim." *See id*. The Court simply notes that the inclusion of language supporting emotional damages is not reason enough to dismiss this claim. Accordingly, RGT's Motion to Dismiss Claim 4 is DENIED.

6. Conversion (Claim 5)

In his 5th Claim, Sagastume alleges that RGT wrongfully repossessed his truck when it took possession of it notwithstanding the fact that he was not in default. RGT reviews the necessary elements of conversion[8] and claims that Sagastume has failed to allege that he owned the property at issue. Additionally, RGT believes that Sagastume has inappropriately included a claim for punitive damages in this cause of action in violation of Idaho law.

First, while it is true that Sagastume does not state that he owned his truck *in this section of his Complaint,* he has made this assertion elsewhere. *See* Dkt. 4, at 3. Based upon the idea of incorporation, the Court finds RGT's argument meritless. At the current juncture, Sagastume has alleged sufficient facts under each prong of the conversion test to withstand RGT's Motion.

Second, the language "and punitive damages should be awarded" is not a punitive damage claim. As both sides correctly note, Idaho Code **section** 6-1604(2) prohibits the inclusion of punitive damages *in a prayer for relief* at the pleading stage. RGT admits that Sagastume has not included punitive damages in his prayer for relief, but nonetheless feels that this language should be struck. For his part, Sagastume states that this language was only meant to put RGT on notice of the possibility of punitive damages and that it

---

[8] The elements of conversion/wrongful repossession are "(1) that the charged party wrongfully gained dominion of property; (2) that property is owned or possessed by plaintiff at the time of possession; and (3) the property in question is personal property." *Sallaz v. Rice*, 161 Idaho 223, 226 (2016).

will only seek to add such a claim if, and when, it becomes apparent and via a separate motion as required.

The Court has dealt with this topic before. In *Watts v. Starbucks Corp.,* the Plaintiff—in a subsection of his Complaint entitled "Reservation of Right to Amend Prayer of Relief to Seek Punitive Damages"—explained that he was "reserving" the right to file an amended complaint to allege punitive damages. Similar to RGT, the Defendant in *Watts* sought to strike this reference as improper under Idaho Code section 6-1604. The Court declined to do so for two reasons:

> First, this reservation is not a "claim for punitive damages." Second, the Court does not see how Watts has failed to comply with Idaho Code. His Amended Complaint does not "contain[ ] a prayer for relief seeking punitive damages." *See id.* Even though Watts did not need to reserve his right to seek punitive damages later, the fact that he did so was not improper. Watts is "the master of his complaint," *Hunter v. Philip Morris USA*, 582 F.3d 1039, 1042 (9th Cir. 2009), and, accordingly, he will be permitted to include statements which are not prohibited, even if they are unnecessary.

No. 2:17-CV-00272-DCN, 2018 WL 1277709, at *3 (D. Idaho Mar. 12, 2018). Similarly, while Sagastume did not need to enunciate that punitive damages might come up, doing so did not violate the requirements of Idaho Code section 6-1604. Idaho law is clear that the prohibition is only applied to the prayer for relief portion of a complaint. There is nothing that would prohibit the inclusion of facts—or in this case, a simple passing phrase—that punitive damages may be sought at a later date.

For both of these reasons, the Court finds that Sagastume's conversion claim survives RGT's Motion to Dismiss.

7. Unjust Enrichment (Claim 6)

Sagastume's sixth Claim alleges that RGT was unjustly enriched when it failed to provide Sagastume with the agreed upon benefits. RGT asserts that Sagastume's allegations are too bare bones to know which benefits he is referencing, but also that this type of claim is inappropriate because under the Truth in Leasing regulations—specifically 49 U.S.C. § 14704(a)(1)—injunctive relief is the only available remedy. As already noted, section (a)(1) only allows injunctive relief and insofar as the Court has already dismissed Sagastume's broad (a)(1) claim, little reason exists to allow this claim forward.

That said, Sagastume does not reference any particular statute, code, or specific legal basis for this claim, so the Court does not know whether this type of claim would fall under subsection (a)(1)—as a violation challenge—or subsection (a)(2)—as a damages claim. Presumably this is a common law, equitable request under Idaho law. This assumption is supported by Sagastume's response—albeit a single line response—to RGT's motion, that his unjust enrichment claim "is included as an alternative claim to the breach of contract claim" and "is proper." Dkt. 15, at 17.

While it is true that Federal Rule of Civil Procedure 8(d)(2) allows "a party [to] set out 2 or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones," *see also Astiana v. Hain Celestial Group, Inc.*, 783 F.3d 753, 762 (9th Cir. 2015) (permitting unjust enrichment claim to be pled alternatively), this claim (unlike the others before it) is truly bare-bones. Sagastume gives no specific factual allegations to support this claim in his complaint; rather he makes a

passing reference to the "foregoing paragraphs" and simply states that it would be unequitable for RGT to accept benefits without paying reasonable value for such benefits. Thus, amendment would likely be necessary here in order for this claim to move forward.

More importantly, however, as the Court has already determined that Sagastume's breach of contract claim may go forward, there is no need to have the alternative claim of unjust enrichment included in his Complaint. Accordingly, the Court will GRANT RGT's motion as to this claim.

If Sagastume still feels that this claim is necessary, he must petition the Court for an opportunity to amend, explaining in detail the basis for this claim and why it must be pleaded in addition to the breach of contract claim.

8. Bond Claim (Claim 7—erroneously identified as a second "claim 6")

Unlike the claims discussed thus far, Sagastume's final claim is not against RGT, but against Defendant United States Fire Insurance Co. ("USFI"). As the name suggest, USFI is an insurance company that does business in the state of Idaho. Under 49 U.S.C. § 13906, motor carrier brokers are required to file proof of a surety bond, proof of trust fund, or other finial security to ensure financial responsibility.

RGT alleges that the purpose of these bonds is to pay for freight charges (49 U.S.C. § 13906(b)(2)(a)). Sagastume alleges the bond is there in case the broker "fails to carry out its contracts, agreements, or arrangements for the supplying of transportation by authorized motor carriers." 49 C.F.R. § 387.307(b). The Court is not entirely sure of the interplay between the United States Code and the Code of Federal Regulations on this exact topic, but regardless, this claim is premature at best. It does not appear from either

statute that an affirmative claim must be made against the bond itself in a civil action against a motor carrier—as a pre-requisite to suit or simply as part of the complaint—just because the suit may result in damages and implicate the bond.

Plaintiffs' thorough explanation during oral argument regarding the differences between insurance policies and bonds notwithstanding, the Court finds that the inclusion of this claim is unnecessary. Presumably, if Sagastume prevails and RGT is ordered to pay damages, the required bonds will automatically kick in.[9] Likely, RGT would join in such an effort.

In short, the Court will GRANT RGT's motion as to Sagastume's bond claim without prejudice. Accordingly, USFI is DISMISSED as a defendant in this action. If it becomes necessary, Sagastume can move the Court to Amend his complaint to add USFI back into the case and reassert this claim.

## V. ORDER

The Court HEREBY ORDERS:

1. RGT's Motion to Dismiss (Dkt. 14) is GRANTED in PART and DENIED in PART.

2. RGT's Motion is GRANTED on Claim 1, which is dismissed for lack of standing; Claim 6, which is dismissed as duplicative; and Claim 7, which is

---

[9] Alternatively, if, as RGT asserts, the bonds are solely for freight changes and not general damages accrued in civil litigation, then there may be a fight between Sagastume and/or RGT and USFI, but until such a time as that become a reality, there is no need to include this claim.

dismissed as unnecessary at this time. These Claims are dismissed without leave to amend as it appears no set of facts would appropriately support these claims.[10]

3. RGT's Motion is DENIED in that Claims 2, 3, 4, and 5 are not dismissed and need not be amended in any way.

4. United States Fire Insurance Company is DISMISSED as a Defendant.

DATED: May 21, 2019

David C. Nye
Chief U.S. District Court Judge

---

[10] As noted, if Sagastume believes Claim 6 is necessary, he must file a motion requesting leave to amend and explaining why the claim must be included. Likewise, if it becomes necessary to add the bond claim (Claim 7) at some future point, Sagastume may petition the Court to do so.